UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONALD L. HADLEY,

                         Petitioner,

              v.

PAT GLEBE,

                         Respondent.

CASE NO. 12-cv-06036 BHS

REPORT AND RECOMMENDATION

NOTING DATE: August 23, 2013

The District Court has referred this 28 U.S.C. § 2254 petition for a writ of habeas corpus to United States Magistrate Judge J. Richard Creatura. The District Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner seeks relief from a state sentence.

The Court recommends denying this petition; some of the grounds for relief are procedurally barred, the remaining grounds simply do not warrant habeas corpus relief because petitioner fails to show a violation of clearly established federal law as required by 28 U.S.C. 2254(d).

## BASIS FOR CUSTODY

A Cowlitz County jury found petitioner guilty of first degree assault/domestic violence (ECF No. 26, Exhibit 1). The trial judge sent the jury special interrogatories after the finding of guilt and the jury found aggravating factors that supported imposing an exceptional sentence (*id.*). The trial judge imposed an exceptional sentence of one hundred and ninety-two months (*id.*). Petitioner is now in custody serving that sentence.

## FACTS

The Washington State Court of Appeals summarized the facts surrounding the crime and conviction:

> Hadley lived with his girlfriend, Brenda Frisk, for approximately two years in Longview, Washington, before Frisk decided to end the relationship and move to Portland, Oregon, without him. On August 20, 2006, Hadley and Frisk went to a local bar for drinks. Hadley took a "sawed-off bat" with him in his coat sleeve, allegedly for protection. 2 RP at 140. At the bar, Frisk and Hadley consumed about five drinks each. After a few hours at the bar, Hadley got angry about Frisk playing pool and talking with other men.
>
> Hadley and Frisk then left the bar around the same time, but Frisk chose not to go home with Hadley, instead she chose to walk to the nearby home of Art Anderson, her ex-boyfriend, to sleep on his couch. Due to her intoxicated state, Frisk did not remember anything that happened at Anderson's house. Anderson testified that Frisk arrived at his house clearly intoxicated and distraught from arguing or fighting with Hadley. She first went to the wrong house before identifying Anderson's actual residence. Anderson stated that, although she was staggering, she did not have any trouble speaking. Frisk nagged and argued with Anderson, who told her that he did not want any part of it and then called the police to have them drive her home.
>
> Frisk remembers getting out of a car outside her house and then walking inside where it was dark because Frisk and Hadley had not paid the electric bill. She then heard Hadley's voice behind her, which she described as loud and angry, much like a yell. She testified that she was scared when she heard him, based on how he treated her in the past. Frisk does not remember what happened next.
>
> Frisk woke in her bed the next afternoon and tried to leave the bed to use the bathroom. She was dizzy and disoriented and her head hurt. She testified that her equilibrium was not right and that she did not have any balance. She noticed that

her hair was "frizzy and matted up and had a lot of dried stuff on it." 2 RP at 150. She fell to the floor three times while attempting to leave her bed. Hadley was present when she made these attempts, but he did not want her to get up and told her to stay put. He told her that she just needed to lie down for a while. When she insisted that she needed to use the bathroom, he brought a pan so that she could relieve herself while still in bed.

Frisk waited until Hadley left the room to use the bathroom himself, then she crawled and used the walls for balance to get to the living room to call a friend for help. She called Marlene Hadley, Hadley's former sister-in-law, and left a message asking her for help. Marlene's boyfriend, John, called her back after hearing the message and told her he would take her to the hospital.

Hadley became angry when he discovered that Frisk was on the phone, and when Frisk told him that John was coming to take her to the hospital, he said that she could not go to the hospital looking like that. He then washed her hair in the kitchen sink using cold water, which hurt her a great deal. She testified that he then took a hairbrush and combed her hair to eliminate the tangles from the matted portion. Some of her hair came out in the process, which he threw in the trash can.

Frisk testified that the back of her head hurt badly, along with her knee and elbow, but that her eye hurt the worst. When she asked what was wrong with her, Hadley would not tell her anything other than that she needed to stay in bed. Shortly before John arrived, Hadley told Frisk that she had fallen and hit her head on the refrigerator.

At St. John Medical Center, the emergency room doctor noted that she had multiple facial and head injuries, including swelling to her left eye and a three-and-one-half centimeter laceration on the back of her head. Scans revealed that Frisk had a right subdural hematoma, [footnote omitted] a smaller left frontal subdural hematoma, and swelling around the laceration on the back of her head. Frisk had also suffered a concussion. In addition, she had a medial orbit fracture, which the doctor described as a fracture to the small bones in her left eye socket.

Because St. John's did not have a neurosurgeon on staff, the doctor transferred her to the Oregon Health Sciences University (OHSU) in Portland. The OHSU doctors diagnosed Frisk with traumatic brain injury, meaning that the injury was the result of a fair amount of force.

Several doctors testified at trial about Frisk's injuries. Emergency room doctor, Dr. Theodore Leslie testified that Frisk's eye injury was the result of a directed force. He stated that although a simple fall could possibly create this kind of force, it was unlikely because the injury was only to her eye and not to the rest of her face. At OHSU, Dr. William Wilson determined that Frisk's injuries were traumatic brain injuries. He testified that although many types of injuries occur

from falls, the combination of Frisk's injuries made a fall unlikely. Dr. Brett Ueeck, a maxillofacial surgeon, testified that eye injuries like Frisk's are most often associated with personal violence or sporting injuries. He noted that ground-level falls are usually associated with injuries to the nose, forehead, or chin, none of which occurred in Frisk's case.

Frisk's mother, Wilda Parkhurst, also testified that she tried to call Frisk around two or three o'clock on the afternoon that she was stuck in bed, but when Hadley answered, he told her that Frisk was sleeping and would have to call her back. He did not tell her about Frisk's injuries. Later that evening, presumably after John picked Frisk up to take her to the hospital, Hadley called Parkhurst and told her that Frisk was in the hospital because she fell and hit her head.

While Frisk was at OHSU, Parkhurst, along with Frisk's brother and sister-in-law, went to Frisk's house to gather her things so that she could move out. [footnote omitted] Parkhurst called the Longview police when she found blood in several rooms of the house.

Detective Reece took pictures of bloodstains on the carpet in the kitchen, the stove, and the doorjamb of the bedroom door off the kitchen at Frisk's house. He photographed bloody bedding in the bedroom, and found a bloody washcloth in the bathroom and bloody hair in the kitchen trash can. He also found a pair of broken sunglasses tangled up in the bloody hair. Additionally, he located a back scratcher missing a middle wheel with "red on it" in the bedroom. 3 RP at 390.

Frisk testified that they did not normally keep the back scratcher in the bedroom and that it had not been broken the night before, nor was there any blood on it the night before. She testified that there was not any blood in the house the night before. In addition, she testified that she had been wearing her sunglasses the night before and that she had not thrown them away or broken them.

Marlene visited Frisk in the hospital and spoke to her about what happened. Frisk appeared nervous, scared, and confused. The next day, Marlene spoke to Hadley, who told her that he found Frisk injured but that he did not do it. He told her that he investigated several other bars that Frisk had been to the previous night and that he heard that somebody followed her home from the bar because she had upset the person at the bar.

Following her release from the hospital, Frisk continued to have difficulty concentrating, walking, and talking. Parkhurst took Frisk to a support shelter for women because she thought it would be the safest place for her. The women at the shelter helped attend to Frisk's injuries and helped her with toileting, moving around, and personal hygiene.

Frisk's next-door neighbor, Dana Ferguson, testified that, on the night of the incident, she came home around one-thirty or two o'clock in the morning and

heard Frisk and Hadley fighting. She described Hadley's voice as eerie. She heard Frisk say, "I've had enough," to which Hadley replied, "I'll tell you when you've had enough." 3 RP at 325. She next heard Frisk moan and then heard a thud.

Detective Tim Deisher interviewed Frisk twice about what happened to her. On August 24, 2006, Frisk did not recall how she received the injuries, but she relayed to the detective that Hadley told her that she fell outside, although she was not sure if that was true. She told Detective Deisher she thought she left the bar with Hadley but she did not remember the walk home. On August 30, 2006, Frisk told the detective Hadley struck her with a souvenir bat in the front yard.

The State charged Hadley on June 29, 2006, with one count of first degree assault-domestic violence, or in the alternative, one count of second degree assault-domestic violence. On December 18, 2006, the State filed a separate notice of intent to seek an exceptional sentence, alleging deliberate cruelty and an on-going pattern of domestic violence. The State did not amend its charging information to include its intention to seek an exceptional sentence.

Before trial, the trial court held a hearing to determine the admissibility of Hadley's previous convictions and prior bad acts of domestic violence against Frisk. The State called Frisk, Marlene, Anderson, and Ferguson to testify to the prior acts and provided the trial court with a list of potential evidence. The trial court ruled that some of the instances were admissible to show motive or lack of accident, but not to show common scheme or plan. The trial court also admitted those acts as relating to Frisk's state of mind and her credibility while she testified. The trial court determined that the State proved the acts of misconduct by a preponderance of the evidence, that the acts were relevant to prove an element of the crime, and that the probative value outweighed any prejudice.

At the hearing, Frisk testified to the following instances of abuse: In 2002, Hadley kicked in the bathroom door, breaking the doorframe, entered the room, and punched Frisk in the face a few times. Frisk suffered bruising and swelling. Police were notified and Hadley was convicted of assault.

In 2003, Hadley kicked and stomped Frisk with his cowboy boots, breaking her denture plate in half. Frisk suffered at least 68 visible bruises on her body and was unable to leave bed for five days. Although Frisk did not tell anyone at the time that Hadley caused these injuries, Marlene witnessed the bruising.

Next, in September 2003, Hadley shoved Frisk down the stairs where she fell and cut her arm on a plate. Police arrested Hadley and he was convicted of assault.

In 2004, Hadley punched Frisk in the mouth, breaking her denture plate again. She jumped out of her bedroom window to escape. She did not report the incident because Hadley begged and pleaded with her and she hoped that he would get

help for his problems. Anderson testified that Frisk showed up at his house later that evening barefoot.

Also in 2004, Hadley threw a full beer can at Frisk, striking her and splitting her forehead open. She did not go to the hospital because Hadley did not want anyone to know what had happened. She used butterfly bandages to seal her injury as best she could.

Frisk would sometimes carry weapons or put weapons around the house to protect herself. She would sometimes put knives in the bedroom doorjamb to prevent Hadley from getting inside. During the last few years, Hadley threatened to kill Frisk several times.

The State introduced citations supporting several of these allegations and the judgments and sentences showing Hadley's convictions for assaulting Frisk on September 13, 2003, and for assault and malicious mischief on July 15, 2002. The trial court also allowed Hadley to solicit evidence that Frisk had earlier run him down with her car while she was intoxicated. The trial court granted Hadley a continuing objection to the admission of all prior bad acts evidence.

Based on the trial court's ruling, the parties drafted an instruction to the jury, which the trial court gave before the State began its case in chief. Neither party objected to the instruction. The instruction provided:

If you determine, based on the evidence, that prior assaults occurred, that evidence of prior assaults by the Defendant on the victim may only be considered by you to understand the victim's state of mind at the time of any statements she made before testifying or while testifying and during the assault, if you determine an assault occurred. It might also be considered as proof of motive by the Defendant. The evidence of prior assaults by Ms. Brenda Frisk on the Defendant may only be considered by you as to bias on behalf of Ms. Frisk against the Defendant.

2 RP at 124-25.

Following arguments, the trial court instructed the jury on the charges but not on the aggravating factors. The jury found Hadley guilty of first degree assault and answered affirmatively through a special verdict form that Hadley and Frisk were family or household members at the time of the offense. The trial court then instructed the jury on the aggravating factors and both parties provided argument. The jury returned special verdict forms, finding that the State proved each of its alleged aggravating factors beyond a reasonable doubt. The trial court sentenced Hadley to an exceptional sentence of 192 months over Hadley's objection that he lacked notice of the aggravating factors because the State did not include them in the information.

(ECF No. 26, Exhibit 2, pp. 1-9).

<u>PROCEDURAL HISTORY</u>

Petitioner filed a direct appeal that raised six grounds for relief:

1.     The trial court denied the defendant a fair trial under Washington Constitution, Article 1, § 3 and United States Constitution, Fourteenth Amendment when it admitted evidence of similar convictions and similar uncharged offenses against the same complaining witness.

2.     The trial court violated Washington Constitution Article 4, § 16, when it instructed the jury that the complaining witness was a victim of the defendant's assaults.

3.     The trial court violated the defendant's right to due process under Washington Constitution, Article 1, § 3 and United States Constitution, Article 1, § 3 and United States Constitution, Fourteenth Amendment when it entered judgment of conviction for first degree assault because substantial evidence does not support this charge.

4.     Trial counsel's failure to object when the state introduced irrelevant, unfairly prejudicial evidence denied the defendant his right to effective assistance of counsel under Washington Constitution Article 1, § 22 and United States Constitution, Sixth Amendment.

5.     The cumulative errors in this case violated the defendant's right to a fair trial under Washington Constitution, Article 1, § 3 and United States Constitution, Fourteenth Amendment.

6.     The trial court's imposition of an exceptional sentence based upon aggravated factors not alleged in the information violated the defendant's right to notice under Washington Constitution, Article 1, § 22 and under United States Constitution, Sixth Amendment.

(ECF No. 26, Exhibit 3). The Washington State Court of Appeals affirmed the conviction and sentence (ECF No. 26, Exhibit 2). Petitioner raised four grounds for relief in a motion for discretionary review that he filed with the Washington State Supreme Court:

1.     ISSUE ONE: Trial court denied petitioner a fair trial when the court instructed the jury that petitioner was guilty before trial began.

2.     ISSUE TWO: Prosecution withheld exculpatory and impeaching evidence from defense.

3.   ISSUE THREE: Trial court denied petitioner a fair trial when it admitted evidence of prior, similar convictions and allegations.

4.   ISSUE FOUR: Defense counsel's failure to object when state introduced irrelevant, unfairly prejudicial evidence, and counsel's failure to impeach false declarations denied petitioner effective assistance of counsel.

(ECF No. 26, Exhibit 8, pp. 1-2). On February 4, 2009, the Washington State Supreme Court denied review without comment (ECF No. 26, Exhibit 10).

In February of 2010, petitioner filed a motion for post conviction relief from judgment in Superior Court (ECF No. 26, Exhibit 18). The Superior Court transferred the motion to the Washington State Court of Appeals for consideration as a personal restraint petition (ECF No. 26, Exhibit 20). The Washington State Court of Appeals dismissed the petition as untimely and did not address the merits (ECF No. 26, Exhibit 22).

Petitioner filed a motion for re-consideration that the Washington Court of Appeals transferred to the Washington State Supreme Court for handling as a motion for discretionary review (ECF No. 26, Exhibits 23 and 24). The Washington State Supreme Court Commissioner found that the petition was timely and called for a response (ECF No. 26, Exhibit 25). Petitioner presented six grounds for review in this motion for discretionary review:

1.     Unlawful Warrantless Search and Seizure.
       The person consenting to the search of Mr. Hadley's home lacked
       authority to do so under *State v. Eisfeldt*, 163 Wn.2d 628 (2008) and
       Washington State Constitution, Article 1, Section 7.

2.     Ineffective Assistance of Trial Counsel (new issues).
       Counsel allowed evidence to be introduced obtained through an unlawful
       warrantless search and seizure and failed peremptory challenge of juror
       who is a jail guard where the defendant was being held during trial.

3.     The State violated Petitioner Hadley's Right of Due Process. U.S.
       Constitution's 5, 6, and 14, Washington State Constitution's Article
       1, Sections 9 and 22.

REPORT AND RECOMMENDATION - 8

1                   The state did not meet the required element of "permanent disfigurement"
to allowed [sic] a charge or conviction of first degree assault. (US Const.

2                   5, 6 and 14, Wa. st const art. 1, sec. 9 and 22.)

3         4.       Conflict of Interest with Appellate Counsel John Hay (newly discovered
evidence).

4                   Counsel was representing a state's witness against the petitioner while
representing petitioner on appeal.

5

6         5.       Trial Court erred by not removing a potential Juror for Cause. (Potential
Juror is a Jail Guard where the defendant was housed.)

7         6.       Trial Court Gave the Jury An Improper Special verdict instruction.
Analogous to *State v. Bashaw*, 234 P.3d 195, 169 Wash.2d 133 (Wa.

8                   07/01/2010)

9  (ECF No. 26, Exhibit 23, at 2-4). The Washington State Supreme Court Commissioner denied

10  petitioner's motion for discretionary review (ECF No. 26, Exhibit 28).

11         Petitioner briefed eight grounds for relief in his memorandum in support of his federal

12  habeas corpus petition:

13         1.       Does the trial court deny a Defendant a fair trial under, United States
Constitution, Sixth Amendment, and deny a defendant's right of due

14                 process under United States Constitution, Fourteenth Amendment and
Washington State Constitution, Article 4 § 16 when it failed to properly

15                 instruct the jury with a correct limiting instruction granted the Defendant
in Limine.

16

17         2.       In a case where a defendant is charged with assault, does the trial court
violate a Defendant[']s right to a fair trial under United States

18                 Constitution, Fourteenth Amendment and Washington State Constitution,
Article 1, § 3, if it admits evidence of similar convictions and alleged

19                 uncharged offenses.

20         3.       Does the State violate a defendant's United States Constitution,
Fourteenth Amendment and Washington State's Constitution, Article

21                 1, § 3, Right of Due Process and *Brady v. Maryland*, 373 U.S. 83 (1963),
when it withholds exculpatory and impeachment evidence from the

22                 defendant.

23         4.       Was the Defendant denied a fair trial in violation of Washington State's
Constitutions, Article 1, § 7, when the State used evidence obtained by a

24                 warrantless, invalid consent, search and seizure.

1

2

3
5.    Was the Defendant denied a fair trial and right of due process in accord with United States Constitution Sixth and Fourteenth Amendments and Washington State Constitution, Article 1, § 22, if all elements of RCW 9A.36.011, (First Degree Assault), did not exist for the charge.

4

5
6.    Did [the] trial court abuse its discretion and deny Defendant['s] United State's Constitution, Sixth Amendment, right to a fair trial by failing to excuse a juror for-cause.

6

7
7.    Was the Defendant denied, United States Constitution Sixth Amendment, right to a fair trial and effective assistance of Counsel.

8

9
8.    Was a Conflict of interest, ineffective assistance of Appellant [sic] Counsel, and denial of Defendant's United States Constitution Sixth and Fourteenth Amendments and Washington State Constitution, Article 1, § 22, right of due process.

10
(ECF No. 15, at 4-6).

## EVIDENTIARY HEARING NOT REQUIRED

11

12
Evidentiary hearings are not usually necessary in a habeas case. According to 28 U.S.C.

13
§2254(e)(2) (1996), a hearing will only occur if a habeas applicant has failed to develop the

14
factual basis for a claim in state court, and the applicant shows that: (A) the claim relies on (1) a

15
new rule of constitutional law, made retroactive to cases on collateral review by the Supreme

16
Court that was previously unavailable; or if there is (2) a factual predicate that could not have

17
been previously discovered through the exercise of due diligence; and (B) the facts underlying

18
the claim would be sufficient to establish by clear and convincing evidence that but for

19
constitutional error, no reasonable fact finder would have found the applicant guilty of the

20
underlying offense. 28 U.S.C. §2254(e)(2) (1996).

21
Petitioner's claims rely on established rules of constitutional law. Further, there are no

22
factual issues that could not have been previously discovered by due diligence. Finally, the facts

23
underlying petitioner's claims are insufficient to establish that no rational fact finder would have

24

REPORT AND RECOMMENDATION - 10

1    found him guilty of the crime. Therefore, this Court concludes that an evidentiary hearing is not

2    necessary to decide this case.

3    <u>STANDARD OF REVIEW</u>

4         Federal courts may intervene in the state judicial process only to correct wrongs of a

5    constitutional dimension. *Engle v. Isaac*, 456 U.S. 107 (1983). Section 2254 explicitly states that

6    a federal court may entertain an application for writ of habeas corpus "only on the ground that

7    [petitioner] is in custody in violation of the constitution or law or treaties of the United States."

8    28 U.S.C. § 2254(a) (1995). The Supreme Court has stated many times that federal habeas

9    corpus relief does not lie for mere alleged errors of state law. *Estelle v. McGuire*, 502 U.S. 62

10   (1991); *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984);

11        A habeas corpus petition shall not be granted with respect to any claim adjudicated on the

12   merits in the state courts unless the adjudication either: (1) resulted in a decision that was

13   contrary to, or involved an unreasonable application of, clearly established federal law, as

14   determined by the Supreme Court; or (2) resulted in a decision that was based on an

15   unreasonable determination of the facts in light of the evidence presented to the state courts. 28

16   U.S.C. §2254(d). Further, a determination of a factual issue by a state court shall be presumed

17   correct, and the applicant has the burden of rebutting the presumption of correctness by clear and

18   convincing evidence. 28 U.S.C. §2254(e)(1).

19   <u>DISCUSSION</u>

20   1.    Search and Seizure - Ground for relief 4.

21        In his fourth ground for relief, petitioner argues that the victim's mother did not have

22   authority to consent to a search of the house where he and the victim lived and that the evidence

23

24

1   the police obtained from the search was inadmissible (ECF No. 15-1, p. 9). Respondent contends

2   that this issue is procedurally barred (ECF No. 25, pp. 12-13).

3          A.      Exhaustion.

4          The Court must first determine if petitioner properly exhausted this claim. A state

5   prisoner seeking habeas corpus relief in federal court must exhaust available state relief prior to

6   filing his petition in federal court. As a threshold issue, the Court must determine whether or not

7   petitioner has properly presented the federal habeas claims to the state courts. 28 U.S.C. §

8   2254(b)(1) states, in pertinent part:

9          (b)(1)   An application for a writ of habeas corpus on behalf of a person in custody
                     pursuant to the judgment of a state court shall not be granted unless it
10                   appears that:
           (A) the applicant has exhausted the remedies available in the courts of the  state;
11         or
           (B)       (i) there is an absence of available state corrective process; or
12                       (ii) circumstances exist that render such process ineffective to
                         protect the rights of the applicant.
13

14         To exhaust state remedies, petitioner's claims must have been fairly presented to the

15   state's highest court.  *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Middleton v. Cupp*, 768 F.2d

16   1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state Supreme Court

     even though the state court did not reach the argument on the merits).
17

18         It is not enough that all the facts necessary to support the federal claim were before the

19   state courts or that a somewhat similar state law claim was made.  *Duncan*, 513 U.S. at 365-66

20   (*citing Picard*, 404 U.S. at 275 *and Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must

21   present the claims to the state's highest court based upon the same federal legal theory and

22   factual basis as the claims are subsequently asserted in the habeas petition.  *Hudson v. Rushen*,

23   686 F.2d 826, 830 (9th Cir. 1982), *cert denied* 461 U.S. 916 (1983); *Schiers v. California*, 333

24   F.2d 173, 176 (9th Cir. 1964) (petitioner failed to exhaust the claim that the state trial court

REPORT AND RECOMMENDATION - 12

1  improperly admitted evidence because petitioner never presented such a claim to the state court).

2  Specifically, petitioner must apprise the state court that an alleged error is not only a violation of

3  state law, but a violation of the Constitution. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).

4      When petitioner raised his search and seizure claim before the Washington State Supreme

5  Court, he raised the claim as a violation of state law and not as a violation of a federally

6  protected constitutional right (ECF No. 26, Exhibits 23 pp. 2-3). Further, the Washington State

7  Supreme Court Commissioner relied on state law and did not discuss any federally protected

8  right in deciding the issue (ECF No. 26, Exhibit 28, pp. 2-3). Petitioner did not properly exhaust

9  this issue because he did not raise it as a federal claim.

10      B.    Procedural bar.

11      Petitioner cannot return to state court on this issue as any subsequent personal restraint

12  petition would be second or successive. *See* RCW 10.73.140. Respondent also argues that any

13  new personal restraint petition would be time barred pursuant to RCW 10.73.090 (ECF No. 25,

14  p.14). Because petitioner cannot return to state court to exhaust this ground for relief, petitioner

15  has procedurally defaulted on this claim.

16         In all cases in which a state prisoner has defaulted his federal claims in state court
       pursuant to an independent and adequate state procedural rule, federal habeas
17         review of the claims is barred unless the prisoner can demonstrate cause for the
       default and actual prejudice as a result of the alleged violation of federal law, or
18         demonstrate that failure to consider the claims will result in a fundamental
       miscarriage of justice.
19
 *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).
20
21      To show cause in federal court, petitioner must show that some objective factor, external

22  to the defense, prevented petitioner from complying with state procedural rules relating to the

23  presentation of petitioner's claims. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (*citing*

24  *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner does not show that anything external to

1    the defense prevented him from raising his claim on federal grounds. Petitioner failed to argue

2    the claim on federal grounds when he raised it. Thus, petitioner does not show cause that excuses

3    his procedural default.

4           Further, petitioner cannot show that a refusal to consider this ground for relief will result

5    in a fundamental miscarriage of justice. The United States Supreme Court held that in order to

6    demonstrate that petitioner suffered a fundamental miscarriage of justice, petitioner must

7    establish that viewing all the evidence, in light of new reliable evidence, "it is more likely than

8    not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

9    *House v. Bell*, 547 U.S. 518, 537 (2006) (*citing Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

10          Petitioner presents no new evidence that would show that he is innocent. Accordingly, he

11   does not show that a fundamental miscarriage of justice will occur if the Court denies

12   petitioner's procedurally defaulted ground for relief. The Court recommends declining to

13   consider ground for relief number four because it is procedurally defaulted.

14          In the alternative the Court would recommend denial of this ground for relief because it is

15   not cognizable in a habeas corpus proceeding. A person who has had a full and fair opportunity

16   to litigate a search and seizure issue in state court cannot raise the issue in their federal habeas

17   corpus petition. *Stone v. Powell*, 428 U.S. 465, 482 (1976).

18          The Fourth Amendment assures the "right of the people to be secure in their persons,

19   houses, papers, and effects against unreasonable searches and seizures." Courts will exclude

20   evidence in order to effectuate these rights. *Stone v. Powell*, 428 U.S. 465, 482 (1976).

21   However, the exclusionary rule itself is not a personal constitutional right. *Id*. at 486. The rule is

22   a judicially created remedial device designed to deter future misconduct by removing the

23   incentive to disregard the Fourth Amendment.  *Id*. at 484.  Evidence obtained in violation of the

24

REPORT AND RECOMMENDATION - 14

1    Fourth Amendment is excluded in the hope that the frequency of future violations will decrease.

2    *Id*. at 492. As with any remedial device, application of the exclusionary rule is restricted to those

3    areas in which its remedial objectives are thought to be most efficaciously served. *United States*

4    *v. Calandra*, 414 U.S. 338, 348 (1974). The Supreme Court recognized that implementation of

5    the exclusionary rule at trial and on direct appeal discourages law enforcement officials from

6    violating the Fourth Amendment. *Powell*, 428 U.S. at 492-93. "But the additional contribution, if

7    any, of the consideration of search-and-seizure claims of state prisoners on collateral review is

8    small in relation to the costs." *Id*. at 493. For this reason, the *Powell* Court removed Fourth

9    Amendment claims from the scope of federal habeas corpus review. The Supreme Court held:

10   
11           "[W]here the state has provided an opportunity for full and fair litigation of a
             Fourth Amendment claim, the Constitution does not require that a state prisoner
             be granted federal habeas corpus relief on the ground that evidence obtained in an
12           unconstitutional search or seizure was introduced at his trial."

13   *Powell*, 428 U.S. at 482. It is not necessary that a petitioner actually litigate the Fourth

14   Amendment claim in state court. *Powell* bars habeas corpus review of such claims so long as

     petitioner had the opportunity to litigate the claims. *Id*.
15   
             Petitioner had the ability to raise this issue both at trial and on direct appeal. Therefore, in
16   
     the alternative, the Court recommends declining to consider petitioner's fourth ground for relief
17   
     because it is not a cognizable claim.
18   
     2.      Use of a limiting instruction that referred to Brenda Frisk as "the
19              victim." – Ground for relief 1.

20           Petitioner alleges that the trial court violated a pretrial ruling because a limiting

21   instruction on the admission of prior acts referred to Brenda Fisk as "the victim." (ECF No. 15,

22   p.18).  The Court cannot grant relief on this claim because petitioner fails to show that the

23   instruction violated any clearly established federal law as required by 28 U.S.C. §2254(d).

24

1    Further, the Washington State Court of Appeals considered this issue as a state law issue and

2    held:

3           Hadley argues that in the first sentence of this instruction, the trial court
            tells the jury that it will hear evidence of alleged prior assaults by the defendant
4           against the victim in this case. But the challenged instruction does not convey the
            trial court's opinion on any of the evidence. The instruction clearly instructs the
5           jury that they must first find that the previous assaults occurred, as well as the
            current alleged assault, before they consider what impact the prior assaults had on
6           the "victim." Br. of Resp't at 40. We agree with the State that the trial court's
            instruction merely led to a logical conclusion-that if the jury finds there was a
7           crime, then the person that is the object of that crime is the victim. Hadley agreed
            to this instruction at the omnibus hearing, except to the word "victim." But, in any
8           event, the instruction was not improper.

9           And any impact of the use of "victim" in the instruction was diminished
            when the trial court orally instructed the jury before deliberation and substituted
10          the term "victim" with Frisk's name. [footnote omitted]. Further, the trial court
            instructed the jury that they were the sole judges of credibility and that the trial
11          court would not comment on the evidence. If the jury felt that the trial court had
            commented on the evidence, the trial court instructed the jury to disregard the
12          comment. This court presumes that the jury follows the trial court's instructions.
            *State v. Sivins*, 138 Wn. App. 52, 61, 155 P.3d 982 (2007) .

13
            We noted above that overwhelming untainted evidence independent of the
14          trial court's instruction supported Hadley's conviction. There was no error.

15   (ECF No. 26, Exhibit 2, pp.18-19).

16          Petitioner is not entitled to relief because the claim is not based on clearly established

17   federal law. Ordinarily, issues regarding jury instructions present questions of state law only and

18   are, therefore, not susceptible to federal habeas corpus review.  *Estelle v. McGuire*, 502 U.S. 62,

19   71-72 (1991). A faulty jury instruction requires habeas relief only if the instruction by itself so

20   infected the entire trial that the resulting conviction violates due process. *Estelle v. McGuire*, 502

21   U.S. at 72; *Boyde v. California*, 494 U.S. 370, 378 (1990); (*citing Cupp v. Naughton*, 414 U.S.

22   141, 147 (1973)). Petitioner fails to show that the state court's ruling on this issue resulted in a

23   decision that was contrary to, or involved an unreasonable application of, clearly established

24

1  federal law, as determined by the Supreme Court; or resulted in a decision that was based on an

2  unreasonable determination of the facts in light of the evidence presented to the state courts. The

3  Court recommends denial of petitioner's first ground for relief.

4  3.       Admission of evidence regarding prior incidents - Ground for relief 2.

5  Petitioner alleges that the trial court's admission of evidence regarding prior incidents violated

6  his right to due process under the Fourteenth Amendment (ECF No. 15, pp. 4-5). Petitioner also

7  argues that this evidence was not admissible under the Federal Rules of Evidence (ECF No. 15,

8  pp. 26-29).

9         Petitioner's criminal trial was held in a Washington State Superior Court and that court

10 applies Washington State's Rules of Evidence, not the Federal Rules of Evidence. The Supreme

11 Court has repeatedly stated that "federal habeas corpus relief does not lie for errors of state law."

12 *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984).

13 Thus, the admission of evidence does not provide a basis for habeas corpus relief unless the

14 admission of that evidence rendered the trial fundamentally unfair. *Holley v. Yarborough*, 568

15 F.3d 1091, 1101 (9th Cir, 2009). Further, as the court in *Holley* noted:

16        Under AEDPA, even clearly erroneous admissions of evidence that render a trial
          fundamentally unfair may not permit the grant of federal habeas corpus relief if
17        not forbidden by "clearly established Federal law," as laid out by the Supreme
          Court. 28 U.S.C. § 2254(d). In cases where the Supreme Court has not adequately
18        addressed a claim, this court cannot use its own precedent to find a state court
          ruling unreasonable. *Musladin*, 549 U.S. at 77, 127 S.Ct. 649.
19
20        The Supreme Court has made very few rulings regarding the admission of
          evidence as a violation of due process. Although the Court has been clear that a
          writ should be issued when constitutional errors have rendered the trial
21        fundamentally unfair, *see Williams*, 529 U.S. at 375, 120 S.Ct. 1495, it has not yet
          made a clear ruling that admission of irrelevant or overtly prejudicial evidence
22        constitutes a due process violation sufficient to warrant issuance of the writ.
          Absent such "clearly established Federal law," we cannot conclude that the state
23        court's ruling was an "unreasonable application." *Musladin*, 549 U.S. at 77, 127

24

REPORT AND RECOMMENDATION - 17

1       S.Ct. 649. Under the strict standards of AEDPA, we are therefore without power
to issue the writ on the basis of Holley's additional claims.

2

3  *Id.* The Washington State Court of Appeals considered petitioner's claim and noted that courts

routinely hold evidence of previous bad acts is admissible in cases like petitioner's (ECF No. 26,

4

5  Exhibit 2, p. 14). After review of the Washington State Court of Appeals ruling on this issue, the

Court cannot say that the ruling of the state court violated clearly established federal law as

6

7  decided by the Supreme Court. The Court finds the reasoning in *Holley* persuasive on this issue

and therefore the Court recommends denial of petitioner's second ground for relief.

8

9  4.      Withholding material evidence and the introduction of alleged perjured testimony –
Ground for relief 3.

10       Petitioner complains that several inconsistent statements made by the victim were

11  admitted at trial (ECF No. 15, pp. 39-42). He also alleges that not all of detective Deisher's

12  interviews with the victim were provided to him.

13       A.     Introduction of inconsistent statements.

14       "If a prosecutor knowingly uses perjured testimony or knowingly fails to disclose that

15  testimony is false, the conviction must be set aside if there is any reasonable likelihood that the

16  false testimony could have affected the jury verdict." *Ortiz v. Stewart*, 149 F.3d 923, 936 (9th

17  Cir. 1998). *Bonin v. Calderon*, 59 F.3d 815, 844 (9th Cir. 1995). The Ninth Circuit has found

18  that even if a jailhouse informant who testified asserted post-trial that such testimony was

19  perjured, it was not enough to warrant habeas relief because there was overwhelming evidence of

20  guilt against the habeas petitioner. *See Bonin*, 59 F.3d at 843-44; *see also Ortiz*, 149 F.3d at 936-

21  37.

22       The record discloses that the witness suffered traumatic brain injury as a result of the

23  assault (ECF No. 26, Exhibit 2, p.4). Further, the witness testified that she remembers getting out

24

of the car at her house and walking inside where she heard Hadley's voice, but she did not remember what happened next (ECF No. 26, Exhibit 2, p. 2). The Washington State Court of Appeals considered petitioner's argument and stated:

> Finally, Hadley contends that the State failed to provide transcripts of two of the three interviews that Detective Deisher conducted with Frisk. He contends that these interviews cast serious doubt on Frisk's credibility. However, Hadley is actually arguing that the jury should not have believed Frisk's story because of her inconsistent testimony. Specifically, he argues that Frisk testified that she fell in the front yard, she told Dr. Leslie she fell several times, she told Detective Deisher that Hadley struck her with a bat in the front yard, she later remembered walking to Anderson's house. But his argument fails because this court does not review credibility determinations or inconsistent testimony on appeal. *Walton*, 64 Wn. App. At 415-16.

(ECF No. 26, Exhibit 2, p. 22). Ms. Frisk's inconsistent testimony was submitted to the jury and defense counsel cross examined witnesses about Frisk's inconsistent testimony (ECF No. 26, Exhibit 2, pp. 21-22). Petitioner has come forward with no evidence to show that the prosecutor knowingly admitted perjured testimony or false evidence. Petitioner fails to show that the state court rulings on this ground for relief violated any clearly established federal law, as set forth by the Supreme Court. 28 U.S.C. § 2254(d). The Court recommends denial of petitioner's third ground for relief.

     5.      Failure to prove all elements of first degree assault – Ground for relief 5.

     On direct appeal petitioner argued the evidence was insufficient to show that a crime had been committed and the Washington State Court of Appeals addressed and rejected that argument (ECF No. 26, Exhibit 2, pp. 9-12). In his subsequent personal restraint petition, petitioner argued that not every element of first degree assault was proven because the state failed to prove the requisite level of harm. The Washington State Supreme Court Commissioner addressed the petitioner's argument and stated:

1    ...This is a variation of Mr. Hadley's insufficient evidence argument rejected on
     direct appeal. He fails to show that the interests of justice require reconsideration
2    of this issue. *In re Pers. Restraint of Brown*, 143 Wn.2d 431, 445, 21 P.3d 687
     (2001). In any event, the evidence showed that the victim was beaten so badly as
3    to substantially damage her motor and brain functions. RCW 9A.36.011(1)(c)
     (first degree assault by infliction of great bodily harm).

4

     (ECF No. 26, Exhibit 28).  RCW 9A.36.011(1)(a) provides:
5

6    a person is guilty of assault in the first degree if he or she, with intent to inflict
     great bodily harm:
7    (a)      Assaults another with a firearm or any deadly weapon or by any force
              likely to produce great bodily harm or death.

8    Frisk's injuries included:

9    ...multiple facial and head injuries, including swelling to her left eye and a three-
     and-one-half centimeter laceration on the back of her head. Scans revealed that
10   Frisk had a right subdural hematoma, and a smaller left frontal subdural
     hematoma, and swelling around the laceration on the back of her head. Frisk had
11   also suffered a concussion. In addition, she had medial orbital fracture, which the
     doctor described as a fracture to the small bones in her left eye socket.

12

13   Because St. John's did not have a neurosurgeon on staff, the doctor transferred
     her to the Oregon Health Sciences University (OHSU) in Portland. The OHSU
     doctors diagnosed Frisk with traumatic brain injury, meaning that the injury was
14   the result of a fair amount of force.

15   (ECF No. 26, Exhibit 2, pp 3-4). The victim's injuries were extensive and the force petitioner

16   used to inflict them was substantial. The jury found that the state had proven all elements of first

17   degree beyond a reasonable doubt (ECF No. 26, Exhibit 1). Given the extent and nature of the

18   victim's injuries, the decisions of the state courts are well supported and they do not result in a

19   decision that is contrary to, or involves an unreasonable application of, clearly established

20   federal law, as determined by the Supreme Court; or result in a decision that is based on an

21   unreasonable determination of the facts in light of the evidence presented to the state courts. The

22   Court recommends denial of the petitioner's fifth ground for relief.

23

24

REPORT AND RECOMMENDATION - 20

6.      Failure to exclude a juror – Ground for relief 6.

Petitioner alleges that his Sixth Amendment right to an impartial jury was violated when the trial judge left a juror on the panel who worked in the jail where he was being housed. Petitioner originally raised this claim as an ineffective assistance of counsel claim by stating that his counsel should have filed a peremptory challenge after a challenge for cause failed (ECF No. 26, Exhibit 18, p. 8). Petitioner raised this issue in its current form in his final motion for discretionary review (ECF No. 26, Exhibit 23 p. 3). The prosecution responded and noted that the voir dire portion of the trial was not transcribed and petitioner presented no evidence of juror bias (ECF No. 26, Exhibit 24 pp. 15-18). Hadley admits in his pleadings that the juror stated that she did not know or recognize Hadley, and that she could be impartial and unbiased (ECF No. 26, Exhibit 21, p.2).

The Washington State Supreme Court Commissioner only addressed the claim as it related to ineffective assistance of counsel (ECF No. 26, Exhibit 28, p. 3). The court noted that petitioner failed to show any prejudice (*id*.).

Respondent addresses this claim on the merits and argues that a trial judge's finding that a juror is not biased is a finding of fact that is presumed correct unless rebutted by clear and convincing evidence (ECF No. 25, p. 31). Respondent argues that the jury selection process was not transcribed and that petitioner "does not present any competent proof, beyond his own allegations" (*id*.).

This Court agrees with respondent.  The trial court's determination that a jury is unbiased is a finding of fact made by the trial judge. *Wainwright v. Witt*, 469 U.S. 412, 426-32 (1985).  A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28

1   U.S.C. §2254(e)(1). Petitioner has not come with any evidence showing that this juror was bias.

2   His entire argument is based on his assumptions and conjecture (ECF No. 15-1, pp. 17- 22). The

3   Court recommends denying petitioner's sixth ground for relief because petitioner has not shown

4   the state court's finding of fact is based on an unreasonable determination of the facts in light of

5   the evidence presented to the state courts.

6   7.      Ineffective assistance of trial counsel – Ground for relief 7.

7           In order to establish that trial counsel was ineffective, petitioner must show that counsel's

8   representation fell below an objective standard of reasonableness and that counsel's deficient

9   performance affected the result of the proceeding.  *Strickland v. Washington*, 466 U.S. 668, 686

10  (1984). The state courts applied this test (ECF No. 26, Exhibit 2, pp. 19-23, Exhibit 28, p. 3).

11          This Court must consider if the state court ruling was unreasonable. *Schriro v. Landrigan*,

12  550 U.S. 465, 473 (2007). The Supreme Court stated "[t]he question under AEDEPA is not

13  whether a federal court believes the state court's determination was incorrect but whether that

14  determination was unreasonable – a substantially higher threshold." *Id*.

15          Petitioner alleges that trial counsel failed to investigate, was not properly prepared, and

16  failed to object to false and perjured testimony (ECF No. 15-1, p 22). Petitioner's federal ground

17  for relief is more expansively worded than the issues that were considered by the state courts.

18          A. Direct Appeal.

19          The Washington State Supreme Court denied review of petitioner's first motion for

20  discretionary review without comment (ECF No. 26, Exhibit 10). Thus, the last reasoned opinion

21  on direct appeal is the Washington State Court of Appeals' decision upholding the conviction

22  and sentence (ECF No. 26, Exhibit 2).

23

24

1    The ineffective assistance of counsel issues the Washington State Court of Appeals

2    addressed on direct appeal involved: (1) not objecting when Parkhurst testified that after Frisk

3    was released from the hospital she was taken to a women's shelter because Parkhurst believed it

4    was the safest place for Frisk; (2) counsel's speaking with a witness, Mr. Anderson, to determine

5    if Frisk had in fact been to his home the night of the assault; and (3) for counsel's failure to test

6    items with blood on them to determine if the blood was Frisk's (ECF No.26, Exhibit 2, pp.19-

7    23).

8        Regarding issue (1), the Washington State Court of Appeals held that while the statement

9    about the women's shelter being the safest place for Frisk was objectionable, petitioner failed to

10   show that the outcome of the proceeding would have been different (*id*.). Regarding issue (2), the

11   court held that counsel's action of interviewing a potential witness was proper (ECF No. 26,

12   Exhibit 2, p. 23).  Finally, regarding issue (3),  the court noted that there was no question whose

13   blood was on the items that were entered into evidence and counsel's performance was not

14   deficient (*id*.).

15       In petitioner's motion for discretionary review from the denial of his direct appeal,

16   petitioner raised issues (1) and (3) (ECF No. 26, Exhibit 8, pp. 15-18). Thus, petitioner exhausted

17   these two issues. Petitioner did not raise issue (2) (ECF No. 26, Exhibit 8, pp. 15-18). Thus, the

18   issue regarding counsel being ineffective for speaking with Mr. Anderson was not exhausted.

19   Because petitioner did not exhaust his second issue, the Court finds that this issue is now

20   procedurally barred. The Court will not discuss this issue further.

21       B.    Collateral Challenges.

22       In addressing petitioner's collateral challenge to his conviction , the Washington State

23   Supreme Court considered if trial counsel was ineffective on separate grounds; namely, (1) for

24

1  counsel's failure to suppress the results of the search of petitioner's home and (2) for counsel's

2  failure to use a peremptory challenge to remove a prospective juror (ECF No. 26, Exhibit 28, p.

3  3). Regarding issue (1), The Supreme Court found that counsel's decision not to object to the

4  search may have been tactical because some of the evidence supported petitioner's theory of the

5  case, that the victim was attacked before coming home (*id.*). Regarding issue (2), the Supreme

6  Court held that petitioner failed to show a reasonable probability that the outcome of the case

7  would have been different had counsel excluded the juror (*id.*).

8      C.      Discussion.

9          This Court does not find the state courts' decisions to be unreasonable. Regarding the

10  direct appeal issue (1), Mrs. Parkhurst, Frisk's mother, was a co-signer on the lease and she was

11  properly in the house as an agent of the victim at the time she invited the officer's to come into

12  the house to investigate the blood she had found in several of the rooms (ECF No. 26, Exhibit 2,

13  p. 5). Parkhurst was cleaning because the landlord was evicting petitioner and Ms. Frisk (ECF

14  No. 26, Exhibit 2, p. 5 fn 2). Further, as the Washington State Supreme Court noted, some of the

15  evidence, like blood in multiple rooms of the house, may have supported petitioner's theory that

16  the assault occurred elsewhere. Thus, the decision not to object to the admissibility of the search

17  may have been trial strategy, which cannot form the basis for a claim of ineffective assistance of

18  counsel. *Strickland v. Washington*, 466 U.S. at 689.

19          Regarding the direct appeal issue (3), the court's ruling counsel's failure to test items

20  with blood on them, was also reasonable.  There was no question whose blood was on the items

21  that were introduced at trial. Further, as the Washington State Supreme Court noted, the decision

22  not to object to the introduction of this evidence may have been tactical because defendant's

23

24

theory of the case was that the victim had been assaulted outside the house, blood in multiple rooms of the home supported that theory (ECF No. 26, Exhibit 28 p.3).

Regarding collateral issue (1), for the reasons stated above, the court's ruling regarding counsel's failure to suppress the search of the home was reasonable.

Regarding collateral issue (2), the trial court's finding that the juror was impartial precludes this claim because petitioner fails to show that the results of the trial would have been different had the juror been excluded (ECF No. 26, Exhibit 28, p. 3).

Given the evidence that was before the state court, this Court cannot conclude that the state court rulings were unreasonable. The Court recommends denial of ground for relief seven.

8.    Ineffective assistance of appellate counsel – Ground for relief 8.

Petitioner alleges that appellate counsel was representing a witness from his trial in an unrelated proceeding while at the same time his appellate counsel represented petitioner. Petitioner raised this issue in his final motion for discretionary review (ECF No. 26, Exhibit 23, p. 3). The Washington State Supreme Court held that petitioner failed to show any prejudice as a result of counsel's actions.

In order to establish ineffective assistance of state appellate counsel, petitioner must show that (1) appellate counsel's performance was deficient and (2) that there is a reasonable probability that, but for appellate counsel's deficient performance, the outcome of petitioner's appeal would have been different. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). The Washington State Supreme Court ruling applies the second part of this test. Thus, the state court applied the proper law on review. The ruling of the Washington State Supreme Court is reasonable because petitioner fails to show counsel's performance was deficient or that he could have prevailed on any issue on appeal.

1  9.      Other issues.

2          In his reply brief, petitioner argues that his Sixth Amendment rights were violated

3  because he did not receive proper notice that the state was seeking an exceptional sentence (ECF

4  No. 28, p. 1). In his amended petition, petitioner attached pages from prior briefings that are not

5  properly numbered (ECF No. 14 attached pages). Petitioner did attach a ground for relief that he

6  numbered (9)f VI (ECF No. 14 attached pages) where he states that "the trial courts imposition

7  of an exceptional sentence based upon aggravating factors not alleged in the information violated

8  the defendant's right to notice under...United States Constitution, Sixth Amendment." Petitioner

9  did not brief this issue in his memorandum in support of his petition (ECF No. 15).

10         Petitioner raised this issue on direct appeal and the Washington State Court of Appeals

11 addressed it as a matter of state law (ECF No. 26, Exhibits 2 and 3). Petitioner did not raise the

12 issue when he sought discretionary review from his direct appeal (ECF No. 26, Exhibit 8). Thus,

13 the issue was not exhausted through a direct appeal because petitioner must exhaust the claim at

14 every level of appeal in the state courts. *Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992).

15 Petitioner did not raise the issue in his personal restraint petition (ECF No. 26, Exhibit 18). Thus,

16 the issue was never properly exhausted. Further, petitioner is precluded from returning to state

17 court. This Court's prior briefing regarding procedural bar, cause and effect, and actual

18 innocence applies. *See* supra pp. 11-14.

19         In the alternative, the claim fails on the merits. The Washington State Court of Appeals

20 addressed this issue:

21         Although not yet published when the parties filed their briefs, we recently
           addressed this exact issue in *State v. Berrier*, 143 Wn. App. 547, 178 P.3d 1064

22         (2008). The *Berrier* court addressed an article 1, section 22 and Sixth Amendment
           argument that the State must include the aggravating factors it seeks to pursue in
           the information rather than by separate notice. *Berrier*, 143 Wn. App. At 558-59.

23         We analyzed both RCW 9.94A.537 and *State v. Pillatos*, 159 Wn.2d 459, 483,

24

1   150 P.3d 1130 (2007), ultimately deciding that as long as the defendant's
2   substantial rights are not prejudiced, the State may allege aggravating factors in
    its notice to seek an exceptional sentence separate and apart from the information.
3   *Berrier*, 143 Wn. App. At 558-59.

4   (ECF No. 2, p. 21). The Washington State Supreme Court has also held that aggravating factors

5   need not be charged in the information. *State v. Siers*, 174 Wn. 2d 269, 271, 274 P.3d 358, 359

6   (2012).  Petitioner cites to no United States Supreme Court case supporting his position and he

7   thus fails to show that the ruling of the state court violates clearly established law as determined

8   by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). The Court recommends that

9   this petition be denied.

10                          CERTIFICATE OF APPEAL

11          Petitioner seeking post-conviction relief under 28 U.S.C.§ 2254 may appeal a district

12   court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

13   from a district or circuit judge. A certificate of appealability may issue only if petitioner has

14   made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2).

15   Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the

16   district court's resolution of his constitutional claims or that jurists could conclude the issues

17   presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537

18   U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Pursuant to this

19   standard, this Court concludes that petitioner is not entitled to a certificate of appealability with

20   respect to this petition.

21          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

22   fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

23   6. Failure to file objections will result in a waiver of those objections for purposes of de novo

24   review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).  Accommodating the time limit

1  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

2  August 23, 2013, as noted in the caption.

3        Dated this 1st day of August, 2013.

 

 

 

J. Richard Creatura
United States Magistrate Judge